## MAGUIRE v. MOORE *et al.*, *Plaintiffs in Error.*

DIVISION ONE.

1. **Will**: MEANING OF WORD "HEIRS." The word "heirs" used in a will may sometimes be construed as "children" or "issue," "grandchildren" or "descendants."

2. ———: CONSTRUCTION. So the word "and" will be read "or" when the evident intent of the testator requires it.

3. ———: CONTINGENT REMAINDER. The provisions of a will construed and *held* to create a contingent remainder in the widow and her children under circumstances therein named.

4. ———: TAKING PER CAPITA. The will provided: "After the death of the last of my children, I desire that my real estate shall be sold to the best advantage, and the proceeds equally divided among my wife, or her heirs, and my grandchildren or their heirs living at the time." *Held* that the grandchildren on the death of the testator's last child take the property *per capita* and not *per stirpes*.

Maguire v. Moore.

5.  **Practice in Supreme Court:** DEATH OF ONE OF SEVERAL PLAIN-
TIFFS IN ERROR. The death of one of several plaintiffs in error
or of one of several defendants in error does not abate a suit or
necessitate a revival of it in the supreme court.

*Error to St. Louis City Circuit Court.*—HON. JACOB
KLEIN, Judge.

REVERSED AND REMANDED.

*Jas. O. Broadhead* for plaintiffs in error.

(1) In no event can the heirs of the widow take
any part of the estate of testator. The word heirs will
be held to mean child or children when necessary to
carry out the clear intention of the testator. *Chew v.
Keller,* 100 Mo. 369 ; *Haversteck's Appeal,* 103 Pa. St.
394; *Waddell v. Waddell,* 99 Mo. 345. (2) The
grandchildren take *per capita* and not *per stirpes.
Morrill v. Phillips,* 142 Mass. 240 ; *Olney v. Hall,* 21
Pick. 311.

*C. P. & J. D. Johnson* for defendant in error.

SHERWOOD, P. J.—Maguire, the executor of the last
will of John S. Moore, deceased, instituted the present
equitable proceeding for the construction of said will,
which is as follows :

" I, John S. Moore, of the city of St. Louis, and
state of Missouri, being of sound mind and body, do
hereby make, declare and publish this as my last will
and testament, hereby revoking any and all wills and
testaments by me made.

" I desire to make the following disposition of my
estate : Item 1st. I desire that whatever money I may
have on hand or in bank, or that may be realized from
outstanding accounts or notes, shall be divided equally
between my wife, Ellen L. Moore, and Mrs. A. V. Long
and the children of Mrs. M. M. Thornton ( they receiv-
ing her fifth interest ) ; when all of my children are dead,
then my estate is to be equally divided between my wife

and her heirs and assigns, and the heirs and assigns of my children, after paying my funeral expenses and all debts I may owe, except those secured by deeds of trust on my real estate.

"Item 2d.   I direct that the first $500 realized from interest on sale of my stock in the building association of the Missouri Medical College be appropriated to placing a stone curbing around my lot in Bellefontaine Cemetery and the erection of a suitable monument to my memory, the balance realized from said stock to be divided as my cash above stated.

"Item 3d.   I give and bequeath to my grandson, Willie Thornton, my medical library and surgical instruments, and to my grandson, John Thornton, my canes and jewelry, excepting my watch, which I bequeath to my grandson, Sidney Moore ; my other personal property I wish divided equally between my wife, Ellen L. Moore, and my son, John C. Moore, or their heirs and the heirs of my daughter, Helen M. Barrett.

"Item 4th.   I desire that my real estate in the city of St. Louis, Missouri, and in Cairo, Illinois, shall continue to carry the incumbrance which may be upon the same at my death during the lifetime of my children, and that my wife and my children, or their heirs, shall receive quarterly from my executors one-fifth each of the net income from the rental of my real estate (the children of my daughter, Mrs. M. M. Thornton, deceased, receiving her fifth). After the death of the last of my children, I desire that my real estate shall be sold to the best advantage, and the proceeds equally divided among my wife or her heirs, and my grandchildren or their heirs living at the time.

"Item 5th.   I give and bequeath to my faithful servant, Louisa Randolph, the sum of $50, payable to her one year after the date of my death.

"Item 6th.   I hereby appoint John Maguire, real-estate agent, number 519, Walnut street, my executor of this my last will and testament, and, in the event of

his death or resignation, then such person as the court may appoint.

"Item 7th. Having advanced my son, John C. Moore, twenty-two hundred dollars ($2,200), I desire that amount be deducted from the shares of his heirs in the final division of my estate.

"Item 8th. I hereby desire it to be distinctly understood, that wherever the words, my wife or her heirs, appear, that I mean the heirs of her present marriage to me or her former marriage.

"Witness my hand and seal this twenty-fifth day of July, 1882.

"JOHN S. MOORE.      [Seal]

"Signed, sealed and declared by the aforesaid John S. Moore to be his last will and testament in the presence of us, who at his request and in his presence, and in the presence of each of us, have subscribed our names as witnesses hereto this twenty-fifth day of July, 1882.

"Louis H. Lohmeyer,
"Wm. A. Maguire.

"Having forgotten to mention in item 3, that the heirs of my daughter, Mrs. M. M. thornton, shall be entitled to an equal share in the stocks of the Missouri Medical College belonging to me, I hereby give and bequeath unto them, the said heirs, an equal share of said stock.

"Witness my hand and seal this twenty-fifth day of July, 1882.

"JOHN S. MOORE.      [Seal]

"Signed, sealed and declared by the aforesaid John S. Moore to be an addition to his last will and testament in the presence of us, who at his request and in his presence, and in the presence of each of us, have subscribed our names as witnesses hereto this twenty-fifth day of July, 1882.

"Louis H. Lohmeyer,
"Wm. A. Maguire.

"Codicil Number 1.

"I hereby change the bequest in item 1 of the within will. Instead of giving my wife, E. L. Moore, one-fifth of my estate absolutely, I give her one-third of the income of my estate during her lifetime in lieu of dower.

"JOHN S. MOORE.     [Seal]

"Signed, sealed and declared by the aforesaid John S. Moore to be an addition to his last will and testament, in the presence of us, who at his request and in his presence, and in the presence of each of us, have subscribed our names as witnesses hereto this fourteenth day of June, 1884.      JOHN H. MAGUIRE,

"JOHN MAGUIRE."

The construction given by the lower court to this will was the following:

That the widow takes one-third of the personalty for life, and one-fifth of the real estate for life; that each of the children living, and the heirs of any deceased child taking *per stirpes*, are entitled to one-fourth of the remaining two-thirds of the personalty absolutely, with a vested remainder, dependent upon the life-estate in the widow, in one-fourth of the remaining one-third of the personal estate, and that the widow in addition takes a life-estate in one-fifth of the realty. That, upon the death of the last of the children, the realty is to be sold, and the proceeds divided between the heirs of the four children taking *per stirpes*, and the widow, or, in case of her death, her heirs, taking in the same manner.

That from the proportions going to the heirs of John C. Moore is to be deducted the sum of $2,200, and that the remainder of the estate be divided according to the foregoing finding, as follows:

That the legal title to one-third part of the personal estate shall pass to and vest in a trustee when appointed in trust to said Ellen L. Moore during her life, with

remainder over to those and in the manner hereinafter specified.

That the legal title to the real estate should pass to and vest in a trustee when appointed in trust for the said Ellen L. Moore, John C. Moore, Amanda V. Long, Helen M. Robinson, J. M. Barrett, Ada Thornton, Anna S. Gale, William Thornton and John Thornton, or, in case of the death of either one of them during the continuation of the trust, then for the heirs of such, for and during the life of Jno. C. Moore and Amanda V. Long.

The court then goes on to declare what portions of the net income of the personal estate, and of the rents of the real estate, shall be paid to the parties respectively in accordance with the construction of the will as found by the court. And that, upon the death of John C. Moore and Amanda V. Long, the real estate shall be sold by the trustee to the best advantage, and the proceeds divided between Ellen L. Moore, if she then survives, and the grandchildren of the testator or their heirs then living, who shall take *per stirpes;* or, if said Ellen L. Moore does not survive, then said proceeds shall be distributed between her heirs, and the said grandchildren or their heirs *per stirpes.*

I. Is the construction thus given the will the correct one? is the question presented by the record. By the first item of the will it is provided that: "When all my children are dead, then my *estate* is to be equally divided between my wife *and* her heirs and assigns, and the heirs and assigns of my children."

The subject is next adverted to in the last clause of the fourth item of the will, where it is said: "After the death of the last of my children, I desire that my real estate shall be sold to the best advantage, and the proceeds equally divided among my wife *or* her heirs and my grandchildren, or their heirs living at the time."

An explanation of the testator's meaning then occurs in the eighth item of the will, where he says:

"I hereby desire it to be distinctly understood that whenever the words, my wife or her heirs, appear, that I mean the *heirs* of her present marriage to me or her former marriage."

With this explanation of the testator's own meaning, it seems quite obvious that what he meant is to be arrived at by reading the clause quoted above from the first item of the will which should read thus : "When all my children are dead, then my estate is to be equally divided between my wife *or* the heirs of her present marriage to me or her former marriage and her assigns, and the heirs and assigns of my children."

If this be the correct view, then the clause quoted from item 4 should read as follows: "After the death of the last of my children, I desire that my real estate shall be sold to the best advantage, and the proceeds equally divided among my wife or the heirs of the present marriage to me, or the heirs of her former marriage, and my grandchildren or their heirs living at the time."

Expounding the will in this way is certainly in accord with the intent of the testator, as explained by himself, and this expounding results in saying that the word "*heirs*" must mean children of the former or of the then present husband. And it is proper where the face of the whole will or of the particular clauses relating to a certain subject warrant, and justice and reason require it, that the word "*heirs*" may be construed as "*children*" or "*issue*," "grandchildren" or "descendants." *Waddell v. Waddell*, 99 Mo. 345; *Chew v. Keller*, 100 Mo. 369. And it is proper also to construe the word "*and*" as employed in item 1, as used in the expression, "My wife and her heirs," so as to make it read "*or*." This is constantly done where the evident intent of the testator requires it, and such intent in this particular is clearly shown in the fourth item aforesaid, where the word "*or*" is used in place of the word "*and*." "Living at the time," evidently

means living at the time when the death of the last child of the testator shall occur.

The devise is not to both the wife *and* her heirs, nor to either if not living at the time; but the language is: "The proceeds equally divided among my wife *or* her heirs, and my grandchildren or their heirs living at the time." The result of the use of such language can be only this: That the interest of the widow in this residuary estate is a *contingent remainder*, which is dependent on her surviving the last of the children of the testator. If as seems to have been the case, she had a child by her first husband then this child would have of course a contingent remainder dependent upon his surviving his mother, and also upon his surviving the last child of the testator; but, if both mother and child die before the death of the last of the testator's children, then that portion of the estate would constitute a portion of the residuum to be divided among the children of the then present marriage, and amongst the grandchildren or their heirs, living at the time of the occurrence of the death of the last of the testator's children.

This construction seems entirely to accord with all the clauses of the will, and with what may well be presumed to be the intent of the testator, an intent which is to be gathered from the four corners of the instrument, and which is the polar star in the process of construing a will.

That a contingent remainder was created in the wife and her children by the words already commented on cannot be doubted; and this view is abundantly supported by the following decisions of this court: *Emison v. Whittlesey*, 55 Mo. 254; *DeLassus v. Gatewood*, 71 Mo. 371.

II. But it is doubtful, considering the language of the codicil, whether the clauses in the will respecting the proceeds of the real estate have not been done away with by the codicil; for the testator says: "I hereby

change the bequest in item number 1 of the within will. Instead of giving my wife, E. L. Moore, one-fifth of estate absolutely, I give her one-third of the income of my estate during her lifetime in lieu of dower." If the codocil does abrogate the will in so far as repugnant thereto, and because of such repugnance, then clearly the widow is not entitled to any of the proceeds of the sale of the real estate. But it seems for reasons already given that she is not so entitled.

III.  Do the grandchildren take *per capita* or *per stirpes?* This is the next point for determination. There seems to be no ambiguity in the will on this point; its language is: "After the death of the last of my children, I desire that my real estate shall be sold to the best advantage, and the proceeds equally divided among my wife or her heirs and my grandchildren or their heirs living at the time."

There is no hint or intimation contained in the clause first quoted, or indeed in any clause, that the grandchildren are not to be equal participants in the fund to be distributed, a fund arising from the proceeds of the real estate when sold ; on the contrary they are expressly mentioned as equal participants, and no indication is given that the amount they are to receive is to be limited to the portion which would be coming to their respective parents. They cannot be said to take the same share as their parents, because their parents take no absolute estate under the will in the real property ; they only get a life-estate in the income of that property, and the remainder goes to the grandchildren. As there is no other provision in the will changing the clause aforesaid in the slightest particular, or qualifying the meaning of its plain words, or making any discrimination between the different sets of grandchildren, it seems quite clear that the grandchildren take *per capita and not per stirpes.*

This view finds support in *Morrill v. Phillips,* 142 Mass. 240, where the reversions and remainders were

" upon the death of the sons of the testator, Joseph and Flavel, respectively,.to go to their wives and children, if any children they should leave, and, if not, then equally to all my grandchildren that may be living." The court says: "The natural and obvious meaning of the words quoted is that the property is to go to., the grandchildren living at the death of Joseph or Flavel. The words, 'that may be living,' cannot fairly be referred to any other time. It seems to us clear that the intention of the testator, which must control the construction of the will, was that the funds should go to all his grandchildren who were living at the period fixed by him for the final distribution of the funds. *Denny v. Kettell*, 135 Mass. 138. The provisions that the property was to 'go to all my grandchildren in equal shares,' and that it was to go ' then equally to all my grandchildren that may be living,' show clearly that the testator contemplated and intended that each grandchild should have the same share and repel the claim that the property is to be divided among the grandchildren *per stirpes*. The result is that the ten grandchildren of the testator who were living at the death of Joseph R. Phillips are entitled to have the funds in question divided among them equally *per capita*."

To the same effect is *Olney v. Hull*, 21 Pick. 311, where the court says: " It is not authorized to make a will for the testator. The estate is to be divided equally between those surviving the death or marriage of the widow, that being fixed as the period of distribution."

Item 7 of the will bears on this question ; it is as follows: "Item 7. Having advanced my son, John C. Moore, $2,200, I desire that that amount be deducted from the shares of his heirs in the final distribution of my estate." If, upon the final distribution of the estate, John C. Moore should have no children living, the residuum would go to the other grandchildren

living at the time ; but, in the event of his leaving children living at the time when the event of distribution comes off, then those children would get the same as the other grandchildren, minus the sum directed to be deducted from their shares ; but this deduction obviously would occur whether the distribution be made *per stirpes* or *per capita.* In short, it seems that the $2,200 would be thrown into *hotchpot* with the fund to be distributed, thus making the children of John C. Moore equal with the other grandchildren, but making a suitable deduction only for the purpose aforesaid.

IV. Ellen L. Moore, the widow of the testator, died since this cause came here on error, and her death was suggested at a former term, and since then the cause has been submitted. The death of one of several plaintiffs in error or one of several of the defendants in error does not abate a suit nor necessitate a revival of it in this court. This point was so settled in *Prior v. Kiso*, 96 Mo. 316, after full consideration. The judgment should be reversed and the cause remanded. All concur.