WINN *et al.*, *Appellants*, v. THE LIPPINCOTT INVESTMENT COMPANY *et al.*

Division Two, December 18, 1894.

1. **Deed of Trust**: BONDS: MARSHALING ASSETS. Where deeds of trust have been taken on distinct portions of land, conveyed to secure a certain amount of the bonds given for the purchase price, the fact that the deeds omit to recite which of the bonds are secured by each deed does not render the deeds invalid, but they will all be marshaled so as to protect each holder of the bonds.

2. **Vendor's Lien**: WAIVER. A vendor's lien is waived by the taking of a deed of trust on the land conveyed as security for the purchase money.

3. ————. An agreement to assume the payment of bonds previously given for the purchase price of land, *held* not to give a vendor's lien against the land for the payment of the bonds enforceable against land released from the deed of trust.

4. **Contract**: ASSUMPTION OF ANOTHER'S DEBT. Where one assumes to pay the debts of another, the creditors of the latter may sue on the contract.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Muckle & Winn* for appellants.

(1) The petition as to plaintiff's second cause of action should not have been dismissed. The facts alleged stated the existence of a lien, which plaintiffs can enforce; also a personal liability of the Lippincott Investment Company, upon which plaintiffs are entitled to personal judgments, and which said lien secured. (2) The court should have rendered judgment for plaintiffs on the cause of action set out in second count of the petition. (3) The Lippincott Investment Company, having by the terms of the deed assumed and agreed to pay the notes sued on, was personally liable to the plaintiffs for the amounts due them, respectively. Jones on Mortgages, secs. 748-752; *Heim v. Vogel*, 69 Mo. 531; *Meyer v. Louck*, 44 Mo. 328; *Rogers v. Gosnell*, 58 Mo. 589; *Ensworth v. King*, 50 Mo. 477. (4) And personal judgments should be rendered thereon in an equitable suit to foreclose the lien. 1 Jones on Mortgages [2 Ed.], sec. 752; *Davenport v. Murray*, 68 Mo. 198; *Lackland v. Smith*, 5 Mo. App. 153. (5) The express covenant inserted in the body of the deed to Lippincott Investment Company, whereby the grantee assumed and agreed to pay the notes amounting to $115,000, made the notes by express agreement a charge or lien on the land. *Sidwell v. Wheaton*, 114 Ill. 267; *Moore v. Lackey*, 53 Miss. 85; *Neas' Appeal*, 31 Pa. St. 293; *Miller v. Thompson*, 34 Mich. 10; *Meyers v. Bowers*, 70 Iowa, 95; *Freeman v. Auld*, 48 N. Y. 50; *Cox v. Hoxie*, 115 Mass. 120. (6) No formula of words is necessary for creating a vendor's lien by express contract. Any words that distinctly convey the idea that the land is conveyed, subject to, or charged, with the payment of the money are sufficient. Jones on Mortgages [2

Ed.]; *Moore v. Lackey, supra.* (7) The burden of the whole debt assumed to be paid by the grantee became annexed to, and a charge on, the whole tract covered by the deed. *Welch v. Beers*, 8 Allen (Mass.), 151; *Company v. Mowery*, 67 Iowa, 113; *Rugg v. Brainard*, 67 Vt. 364; *Johnson v. Walter*, 60 Iowa, 315; *Crawford v. Edwards*, 33 Mich. 354; Jones on Mortgages [2 Ed.], sec. 744. (8) And this covenant runs with the land, operating as an incumbrance upon it, not only for the vendor, but for his assignee of the purchase money. *Wilson v. Campbell*, 106 N. Y. 325; *Moore v. Lackey, supra; Sidwell v. Wheaton, supra; Neas' Appeal, supra.* (9) The lien by contract, or the express vendor's lien, is really a mortgage, and becomes a matter of record when the deed is recorded. It is not waived as an implied vendor's lien is, but is governed by the same rules that govern mortgages. *White v. Downs*, 40 Texas, 426; *Carpenter v. Mitchell*, 54 Ill. 126; *Moore v. Lackey, supra; Lush v. Hopper*, 3 Bush (Ky.), 179; *Fogg v. Rogers*, 2 Caldw. (Tenn.) 290; *Bozeman v. Ivey*, 49 Ala. 75; *Lewis v. Perry*, 8 Bush (Ky.), 615; *Hurley v. Holliday*, 35 Md. 469; *Schwartz v. Stein*, 29 Md. 119; *Dunlap v. Shanklin*, 10 W. Va. 662. (10) Unless merged in the express vendor's lien, an implied vendor's lien would exist until the Lippincott Investment Company has paid the consideration in full. *Edmonson v. Phillips*, 73 Mo. 61; *Pratt v. Clark*, 57 Mo. 189; *Bennett v. Shipley*, 82 Mo. 448; *Christie v. McKee*, 94 Mo. 241; *Hannah v. Davis*, 112 Mo. 599. (11) The courts will not presume that the vendor's lien has been surrendered without satisfaction, unless upon clear and convincing proof. The burden rests upon the party alleging a waiver; and, if it remains in doubt, the lien will be presumed to be still in force. *Roper v. Day*, 48 Ala. 510; *Delassus v. Poston*, 19 Mo. 425; *Coles v. Withers*, 33 Gratt. 186; *Wilson v.*

*Lyon*, 51 Ill. 166; *Harris v. Banks*, 25 Ark. 510; 2
Story's Eq. Juris., sec. 1224. (12) It is a presumption
of law when a promise is made for the benefit of a
third person that he accepts it. *Rogers v. Gosnell*, 58
Mo. 589; *Ensworth v. King*, 50 Mo. 477; *Markell v.
Telegraph Co.*, 19 Mo. App. 80; *Grass v. Blodget*, 64
Mo. 452. Where an assumption of a debt to a third
party is made by a grantee, on an absolute convey-
ance of land, it is unconditional and irrevocable. The
grantor can not retract his conveyance or the grantee
his promise so as to deprive the party to whom pay-
ment is to be made of the benefit of it. *Rogers v. Gos-
nell*, 58 Mo. 589; *Garsney v. Rogers*, 47 N. Y. 233;
*Hartley v. Harrison*, 48 N. Y. 170; *Stimpson v. Brown*,
6 Hun, 251; *Lawrence v. Fox*, 20 N. Y. 268; *Bay v.
Williams*, 112 Ill. 91; *Douglass v. Wells*, 18 Hun, 88;
*Willard v. Worsham*, 76 Va. 392; *Campbell v. Smith*,
71 N. Y. 26; *Hayden v. Snow*, 14 Fed. Rep. 70; *Ins.
Co. v. Mayer*, 8 Mo. App. 18; Jones on Morgages
[3 Ed.], sec. 764. (13) "He who takes with notice of
an equity, takes subject to that equity." The recital
in the deed to Lippincott Investment Company, that it
assumed and agreed to pay the one hundred and fifteen
notes, amounting to $115,000, as well as the record of
the deed, was notice to all subsequent purchasers of
the existence of the vendor's lien. *Ledos v. Kupfrian*,
28 N. J. Eq. 164; *Major Adent v. Bulkley*, 51 Mo. 231;
*Skinner v. Purcell*, 52 Mo. 96; *Tidings v. Pitcher*, 82
Mo. 379; *Bronson v. Wanzer*, 86 Mo. 411; *Heim v.
Vogel*, 69 Mo. 529; *Orrick v. Durham*, 79 Mo. 174;
*Duncan v. Baker*, 72 Mo. 469. (14) Subsequent pur-
chasers of land, subject to a vendor's lien, are not
released from its operation by an extension of payment
granted to their vendors without their consent. *Dalton
v. Rainey*, 75 Texas, 516; *Case v. O'Brien*, 33 N. W.
Rep. (Mich.) 405.

*Scammon, Crosby & Steubenrauch* and *James F. Mister* for respondents.

(1) The court below gave a vendor's lien on the lots unsold by reason of the ambiguous and indefinite description of the bonds. This was not essential in order to protect the plaintiffs. The three deeds of trust were one and the same transaction, were so intended by the parties, and really constituted but one deed of trust which had no ambiguity. *Crawford v. Elliott,* 78 Mo. 497; *Dobbins v. Edmonds,* 18 Mo. App. 313; *McDonald v. Wolf,* 40 Mo. App. 302; *Sexton v. Anderson,* 95 Mo. 373; *Jennings v. Todd,* 118 Mo. 296; *Carr v. Hays,* 110 Ind. 408; *Hagerty v. White,* 69 Wis. 317. (2) The three deeds of trust being considered as one and constituting a valid deed of trust, and, these deeds evidencing the intention that the property should be subdivided and sold and a clear title made, there can be no such right as a vendor's lien, as claimed on the property in question. The taking of security on the land, waived the vendor's lien in Missouri. *Emerson v. Whittlesey,* 55 Mo. 259; *Briscoe v. Callahan,* 77 Mo. 134; *Sharp v. Collins,* 74 Mo. 266; *Orrick v. Durham,* 79 Mo. 174; *Rogers v. Tucker,* 94 Mo. 346. (3) There was no vendor's lien in favor of W. V. Lippincott and against the Lippincott Investment Company, who purchased the premises from him, because the company owed him no debt, hence plaintiffs were subrogated to nothing. A vendor's lien only arises on the ground of a debt due the vendor by the vendee. There was none from the company to Lippincott. *McKillopp v. McKillopp,* 8 Barb. 532; *Patterson v. Edwards,* 7 Cush. 67; *Hare v. Van Dusen,* 32 Barb. 92; *Lee v. Fabbri,* 15 N. Y. S. C. 361. (4) The court did not err in dismissing the second count of plaintiff's petition. The first count

sought the enforcement of a vendor's lien against Lippincott and a judgment on the notes or bonds made by him. The second sought the enforcement of a personal judgment against the Lippincott Investment Company, and also an enforcement of a vendor's lien against the Lippincott Investment Company. The two causes of action could not be joined in the same petition. The causes of action in the two counts do not affect all the parties to the action. 1 R. S., sec. 2040; *Doan v. Holly*, 25 Mo. 357; 1 McQuillin's Pr. & Pl. 198; *Southwick Co. v. South*, 82 Mo. 282. (5) By the judgment of the court below, the plaintiffs got all the security contemplated by the deed of trust securing their bonds. This being so, it would be infamous for a court of equity to so use the theory of a vendor's lien, itself a creature of good conscience, as to injure the defendants, who are innocent purchasers for value.

*H. L. McCune* and *J. W. S. Peters* for respondent, Laura L. Sayles.

(1) The vendor's lien arising from the sale by the Winner Investment Company to William V. Lippincott, Jr., was waived. Whether a vendor's lien is waived or not, depends upon the intention of the parties, to be gathered from a consideration of all the facts and circumstances of the case. *Pratt v. Eaton*, 65 Mo. 157. (2) And it does not exist where it is evident that the parties never intended to claim it. *Moore v. Holcombe*, 3 Leigh, 596. (3) *First.* A vendor's lien can not be enforced against *bona fide* purchaser without notice, nor any further than the purchaser has notice of it. *Zall v. Carnahan*, 83 Mo. 35; *Brown v. Barrett*, 75 Mo. 275; *Moore v. Holcombe*, 3 Leigh, 597; *Kilpatrick v. Kilpatrick*, 55 Am. Dec. 174. *Second.* A recital (to charge a purchaser) must be such as explains itself by

its own terms, or refers to some deed or circumstance which leads to its explanation. *Jennings v. Todd*, 118 Mo. 296; *Wolfe v. Dyer*, 95 Mo. 545. *Third.* The fact that the purchaser obtained her title by quitclaim is immaterial. *Willingham v. Hardin*, 75 Mo. 429; *Moeller v. Holhaus*, 12 Mo. App. 526. (4) When the Lippincott Investment Company assumed the mortgages previously given, it assumed them subject to all their incidents. One of these was the right to have releases given upon certain payments. It assumed the liability of its grantor, the original mortgagor, and only that. When bonds and mortgages are given at the same time between the same parties, and intended to secure the payment of the same sum of money, they together constitute one contract, and thus express the measure and define the terms of the liability of the mortgagor and the conditions on which he may be discharged. *Paine v. Jones*, 76 N. Y. 278; *Marsh v. Dodge*, 66 N. Y. 533; *Rogers v. Smith*, 47 N. Y. 324. (5) The provision for releases upon certain payments in the deeds of trust was an essential part of the contract. *Paine v. Jones*, 76 N. Y. 274; Wiltsie on Mortgage Foreclosure, 272. (6) The plaintiffs, on general principles of equity, are estopped from claiming a vendor's lien. It is plain that they obtained all the advantages that they contracted for, and which the whole transaction contemplated. The record title conveyed the land to the vendee in such a manner as to make him appear to be the complete owner, with full power to sell. They can not claim their secret lien to the injury of those who, in ignorance of it, have for valuable consideration acquired the legal title. *Moore v. Holcombe*, 24 Am. Dec. 683; *Heuson v. Westcall*, 82 Ill. 224; *Reily v. Co.*, 5 Ohio, 333; *Olkensen v. Lindsey*, 39 Ind. 296; *Burns v. Taylor*, 23 Ala. 255.

*Trimble v. Braley* for respondent, Missouri, Kansas & Texas Trust Company.

*Cook & Gossett* for respondents, W. G. Myers, The Kansas City Investment Company and Edward E. Holmes, Trustee.

GANTT, P. J.—On February 26, 1887, the Winner Investment Company of Kansas City, Missouri, represented by its president, W..E. Winner, made the following proposition to W. V. Lippincott, Jr., of the same place, in a letter of that date addressed to him, as follows:

"*W. V. Lippincott, Esq., City:*

"DEAR SIR:—I will sell you the lands known as South Evanston, containing 131 1-2 acres, more or less, for $131,000, upon the following terms: $16,000 cash and $115,000 in bonds, drawing 8 per cent., running 1, 2 and 3 years, and secured upon the lands as follows: $48,000, secured upon the south 55 acres of the west half of the southwest quarter of section 4, township 49, range 32, payable as follows: $16,000 on or before one year, $16,000 on or before two years, and $16,000 on or before three years.

"Thirty-six and one half acres, being the northeast quarter of the southeast quarter of same section, township and range, on which we will secure $32,000 of said bonds as follows: $11,000 payable in one year, $11,000 payable in two years, and $10,000 payable in three years, all on or before.

"$35,000 secured upon the southeast quarter of the southwest quarter, as follows: $12,000 payable in one year, $12,000 payable in two years, and $11,000 payable in three years, all on or before.

"*All of said notes to be in denominations of $1,000 each; upon the payment of any $1,000 we will release any*

*one acre you select; we will also take in payment on said notes, first mortgage bonds, upon said lands taken by you, not to exceed one third of the actual selling price of said lots.*

"The right of way, one hundred feet wide from the Kansas City, Independence and Park Railroad, is hereby reserved, with the understanding that such part of said land as is not used for tracks shall be opened to the public as a highway.

"This proposition to be accepted immediately, and the deal to be closed on or before April 1, 1887.

"[Signed]     WILLARD E. WINNER,
                          "President."

This proposition was accepted on the same sheet, as follows:

"I accept the above proposition.

"[Signed]     W. V. LIPPINCOTT, JR."

Pursuant to this contract, accepted as above, on the first day of April, 1887, the Winner Investment Company conveyed the several parcels of property named to W. V. Lippincott, Jr., by three warranty deeds in the usual form; and on the same day W. V. Lippincott, Jr., gave to Gardiner Lathrop, as trustee, for the use of the Winner Investment Company, three several deeds of trust to secure the deferred payments named in the contract, on each of the several parcels of land described therein. These deferred payments were all represented by one hundred and fifteen notes or bonds of $1,000 each. *These bonds, secured by the several deeds of trust, were not otherwise designated in the three deeds of trust referred to, than as so many bonds of $1,000 each, due as described in the contract.* Each deed of trust contained, among others the following provisions: *"It is understood and agreed, that the party of the first part (Lippincott), or his assigns, may subdivide the said land into lots, and that*

*they shall have the privilege of paying at any time, one or more of the bonds secured by this deed of trust, together with all interest thereon (no interest being in arrears), and for each and every bond so paid the party of the third part, or his assigns or endorsees, shall release from the lien of this deed of trust, any one acre of land that may be selected by the party of the first part, or his assigns; said acre to include its share of roads and alleys adjacent thereto.*" * * * "These bonds, or any of them, may be paid by depositing the amount of such bond or bonds, with accrued interest thereon, in the Armour Bros.' Banking Company's bank at Kansas City, Missouri, to the credit of said company or its assigns, and thereupon all interest on said bonds for which said money is deposited shall cease, and it shall be the duty of the holder thereof to make the release herein provided, or in case of his or their failure to do so for ten days after such deposit is made, then it shall be the duty of said trustee, or his successor, to make such release on demand, which he is hereby empowered to do."

On the second day of April, 1887, W. V. Lippincott, Jr., and wife, for the expressed consideration of $136,000, conveyed the land named in the contract and deed of trust to the Lippincott Investment Company, by warranty deed, in the usual form, which deed, among other things, contained the following clause, referring to the bonds or notes given by himself for the benefit of the Winner Investment Company: "*The grantee herein agrees to assume and pay off certain notes amounting to $115,000 secured on the above described property, recorded at Independence, Missouri.*"

The bonds referred to contained among them the bonds now in question. The lands conveyed were all platted in the year 1887 into lots and blocks, and a large portion of the lots sold to innocent purchasers.

Out of the $115,000 in bonds, $81,000, or eighty-one bonds and interest, were paid out of the proceeds of the sale of these lots.

It was understood by all the parties to the deeds of trust, and it was by them contemplated, that the lands conveyed were to be subdivided into lots and blocks, and the lots sold and released from the deeds of trust as sold. Mr. Winner, plaintiff's witness, the president of the Winner Investment Company, the representative of the syndicate owning the land and the seller of the property, stated: "The land was bought (by Lippincott) to be platted into lots, and retailed out. It was conveyed by three deeds of trust given back, and this was all one and the same transaction. We relied upon the deeds of trust; nothing was said about the vendor's lien till this suit was brought. The original contract provided how deeds of release should be made, and we undertook to copy it into the deeds of trust. We made no release that we did not get a $1,000 bond to each acre, as provided by the terms of the deeds of trust. It was certainly the object in dividing the $115,000 into payments of $1,000 each for the purpose of enabling Mr. Lippincott to give clear title to any acre of ground as he sold it. The three deeds of trust, and the bonds, were delivered at the same time and as one transaction."

The eighty-one bonds of $1,000, referred to as paid, were all released by one Freeman, who owned two of the bonds, and the remainder by the Winner Investment Company. These releases released all the property originally sold, except that upon which the court below gave plaintiffs a first lien. Mr. Lippincott brought up the bonds in the latter case, and, taking them to the Winner Investment Company, the company canceled the bond, and then released the acre indicated by Mr. Lippincott, who refused to take up

any bond, except through the Winner Investment Company, to the end that a general release might be had from the Winner company after the bonds were all paid.

In the year 1888 the real estate boom in Kansas City ceased. The larger portion of the property conveyed and covered by the deeds of trust had been sold by the Lippincott Investment Company, to which Lippincott and wife conveyed the property. The purchasers of considerable of it had built houses upon it. Other lots had been sold over again several times.

The record nowhere discloses any difference in the relative value of the lots sold and those unsold. All of it must be taken, for the purpose of this division, at the same valuation, acre for acre. For some time after the bonds became due, the interest on the bonds was paid by Mr. Lippincott. The time of payment of the bonds was extended by an agreement between Mr. Lippincott and the holders, the plaintiffs, the Lippincott Investment Company not being consulted, nor their consent thereto obtained in any way.

After Lippincott ceased paying interest on the bonds, this suit was brought. The petition contains two counts. The first count sought to enforce a vendor's lien for the three bonds remaining unpaid held by plaintiffs, and three others held by unknown parties on all the ground described in the three deeds of trust, upon the theory that the deeds of trust were void, and that the releases were void, because none of the bonds were specifically identified as belonging to any one deed of trust.

The second count adopts all the allegations of the first as to the execution of the notes and the ownership of thirty-one of them, by plaintiffs, and then avers that after the execution of the notes, and on or about the second day of April, 1887, William V. Lippincott,

Jr., and Josie C., his wife, by their warranty deed of that date, duly acknowledged and recorded in the office of the recorder of deeds of Jackson county, Missouri, in consideration of $136,000 conveyed all of said lands to the Lippincott Investment Company, a corporation under the laws of this state. Said deed contained a provision that said grantee, the Lippincott Investment Company, assumed and agreed to pay off certain notes amounting to one hundred and fifteen thousand dollars ($115,000), meaning and intending thereby the one hundred and fifteen (115) notes above mentioned; and said agreement to pay said notes was a part of the consideration for the conveyance of said real estate, as aforesaid, by said William V. Lippincott, Jr., and Josie C. Lippincott, his wife, to the Lippincott Investment Company, whereby said defendant, the Lippincott Investment Company, became bound to pay to the said Winner Investment Company, and to the assignees of said notes, the notes held by them respectively, and for the payment of the same, a vendor's lien thereby was created in favor of said William V. Lippincott, Jr., which then and there inured to the holders of said notes, and which passed to, and became vested in, the assignees of said notes held by them respectively, and by reason whereof the said Lippincott Investment Company, has become bound to pay, and is indebted to the plaintiffs, respectively, the amounts alleged to be due in the notes held by them, and for the payment of which the vendor's lien has inured to the plaintiffs and to the holders of said one hundred and fifteen (115) notes, if any, that may still remain unpaid, and is a valid and first lien upon the real estate above described. Plaintiffs, therefore, pray that an account may be taken of the amounts due the plaintiffs, respectively, and for a judgment therefor against the said Lippincott Investment Company, and

that the same be declared a first lien for the payment of said indebtedness to plaintiffs upon all the real estate described in all three of the said deeds of trust, and that it be enforced and foreclosed..

. Prior to the giving of any testimony by the plaintiffs, defendants' counsel asked .that plaintiffs be requested to elect upon which count of their petition they would stand and proceed, as the two counts stated distinct causes of action against different parties and were improperly joined, but the court denied the request, and defendants excepted.

The circuit court gave plaintiffs a vendor's lien on their first count on the unsold lots, or about fifty-one and one half acres of land, on the theory that the deeds of trust were void by reason of the ambiguous and indefinite description of the bonds, and denied them judgment and a vendor's lien against the purchasers who had bought the eighty-one acres, and paid $81,000 therefor and redeemed bonds or notes to that amount of the purchase money. No appeal was taken from that judgment by either side. We are asked to review the action of the circuit court in dismissing the petition as to the second count and refusing a vendor's lien as therein prayed.

The circuit court gave plaintiff a decree enforcing a vendor's lien on the first count in the petition upon the ground that the deeds of trust were void because the description of the notes was too ambiguous and indefinite to support them. As this second count also proceeds on that theory in endeavoring to obtain a second vendor's lien against the lands, and the whole transaction is again under review, and, notwithstanding there is no appeal from the judgment on the first count by either side, we are necessarily called upon to construe the three deeds of trust given by William V. Lippincott, Jr., to Gardiner Lathrop, Esq., to secure

the purchase money to the Winner Investment Company.

We think the circuit court erred in holding these trust deeds void. It is not claimed that they failed in any respect to constitute perfect legal instruments on their face, or are wanting in any formal or substantial requisite, save and except that it appears *dehors* the deeds of trust themselves, and the notes they were given to secure, that, while the exact number of notes described in each deed of trust was executed that day, and of the exact description and were *bona fide* securities, inasmuch as the parties to the notes failed to number or otherwise describe the particular notes or bonds, to be secured by each deed of trust separately, that fact renders the deeds of trust void. To this we can not assent. We know of no principle of law or equity requiring us to so hold. The debt to be secured by a deed of trust or mortgage need not be specifically described. The material question, in such cases, is whether there is a debt still existing which the mortgage was given to secure. *Aull v. Lee*, 61 Mo. 160.

When this test is applied to these deeds, it stands confessed by all parties that they were given to secure one hundred and fifteen *bona fide* bonds or notes of W. V. Lippincott, Jr., of the exact description given in the three deeds. It would be a most unreasonable and unjust conclusion to hold that those solemn securities, thus executed in good faith for value received, were void for such a reason. If void, Lippincott could have sold the land to any other grantee discharged of the lien; but they were not only not void, but entirely valid.

But, it is asked, how is each holder to know which deed of trust secures his particular bond. We answer, that as this ambiguity was latent, the courts, upon the application of such holder, will look into the whole

transaction, and when it does, as it did in this case, will discover that these instruments were all executed concurrently as parts of one transaction, and will hold that all three deeds of trust stand as security for all the bonds described in them, and will thus marshal the securities so as to protect each holder of said bonds. *Jennings v. Todd*, 118 Mo. 296; *Sexton v. Anderson*, 95 Mo. 373; *Dobbins v. Edmonds*, 18 Mo. App. 315; *MacDonald v. Wolff*, 40 Mo. App. 302; *Crawford v. Elliott*, 78 Mo. 497.

The three deeds of trust, then, thus executed and recorded, stood as valid mortgages and express liens on all these lands to secure the payment of all these notes or bonds. A court of equity would preserve the priority of the lien thus created against any subsequent purchaser or lienor, as they were all duly recorded in the county where the land lies, and, upon application, would so marshal the security as to protect the relative rights of each holder of one of these bonds.

These deeds of trust not being void, then, are the holders of these securities entitled to a vendor's lien, as prayed?

The rule as to the retention or waiver of the vendor's lien announced in White and Tudor's Leading Cases in Equity, page 272, as the result of the American cases on this subject, was unanimously approved by this court in *Emison v. Whittlesey*, 55 Mo. 254, *loc. cit.* 259, and is as follows: "The implied lien will be sustained wherever the vendor has taken the personal security of the vendee only, by whatever kind of instrument it may be manifested, and, therefore, any bond, note or covenant given by the vendee alone, will be considered as intended only to countervail the receipt for the purchase money contained in the deed, or to show the time and manner in which the payment is to be made, unless there is an express agreement between

the parties to waive the equitable lien; and, on the other hand, the lien will be considered as waived whenever any distinct and independent security is taken, whether by mortgage on other land, or pledge of goods, or personal responsibility of a third person, *and also, where a security is taken upon the land,* either for the whole or a part of the unpaid purchase money, unless there is an express agreement that the implied lien shall be retained." This was reasserted in *Briscoe v. Callahan,* 77 Mo. 134, and in *Orrick v. Durham,* 79 Mo. 174, and *Boyer v. Austin,* 75 Mo. 81, and *Rogers v. Tucker,* 94 Mo. 346–350.

This last case is cited by plaintiffs in their reply brief in connection with *Hannah v. Davis,* 112 Mo. 599, as an answer to the proposition that the vendor's lien was waived by taking the deeds of trust, but evidently counsel have not noted the distinction made in those two cases. The question in each was, not as to the right to proceed on a vendor's lien, but whether the vendor's prior equity was lost because merged into a mortgage or deed of trust for the purchase money, and the other question as to the priority of a mortgage, executed simultaneously, but not for the purchase money, over other mortgages, and the priority of the mortgage for purchase money was sustained on the authority of *Morris v. Pate,* 31 Mo. 315, and *Linville v. Savage,* 58 Mo. 254. Judge BLACK, in *Rogers v. Tucker, supra,* expressly says: "Again, it has been said in general terms, that taking a mortgage on the land sold for the purchase money waived the vendor's lien. *Briscoe v. Callahan,* 77 Mo. 134; *Orrick v. Durham,* 79 Mo. 177. *The lien is doubtless waived, there being no express reservation of it, in the sense that it is not available as a basis for relief independent of the mortgage,* for the mortgage is the higher security; but the mortgage is ordinarily taken back for the very pur-

pose of securing the vendor's priority for the purchase money, and putting it out of the power of the vendee to destroy or cut off the priority by conveyance and otherwise." This extract marks the distinction be- ·tween the cases, and there is no conflict between them.

By taking these three deeds of trust the vendor, the Winner Investment Company, waived its vendor's lien, but as the decree of the circuit court simply amounted to a foreclosure of the mortgages or deeds of ·trust on that portion of the lands not released, it left defendants without substantial grounds of complaint. When plaintiffs purchased the bonds they took with notice of the waiver of the vendor's lien but they were entitled to the security afforded by the deeds of trust against all subsequent lienors on, and purchasers of, the lands. And, when Lippincott, the original vendee, sold to the Lippincott Investment Company, that company took subject to the mortgages for the purchase money; but, more than that, it assumed the payment of said notes, and thereby became directly liable to the holders of the bonds upon this promise. *Ferry Co. v. Railway*, .73 Mo. 389; *Neim v. Vogel*, 69 Mo. 529; *Fitzgerald v. Barker*, 70 Mo. 685.

But the theory of the second count in the petition, the one now under consideration, is that this assumption of the debt of Lippincott created a second vendor's lien in Lippincott, which passed to plaintiffs without assignment. There are many reasons, we think, why this claim is not tenable.

The deeds of trust being valid and of record, plaintiffs were chargeable with notice that neither the Winner Company nor Lippincott reserved any vendor's lien. It was waived in order to permit Lippincott and his assigns and grantees to subdivide these lands into lots and sell them to the various purchasers and make

Vol. 125—35

perfect titles. This is apparent, not only from the testimony of Winner and Lippincott, but from the recitals of the deeds of trust which provide for a release of an acre every time a bond of $1,000 was paid. When the intention to waive the vendor's lien is thus so strongly manifested, the courts do not hesitate to refuse to give it. *Sullivan v. Ferguson*, 40 Mo. 79; *Christy v. McKee*, 94 Mo. 241. As Lippincott had no vendor's lien, none passed to plaintiffs, who were the indorsees of the Winner Company, which clearly had none.

Much stress is laid on the assumption by the Lippincott Company of Lippincott's notes. By this assumption, as already said, it became liable to be sued by the holders of these bonds, but when Lippincott paid these bonds, he released the debt *pro tanto*, not only against himself, but against the Lippincott Company that had assumed it. When the debt was extinguished there remained no foundation for a suit on the covenant and certainly no lien upon the lots sold and released.

When plaintiffs bought these bonds, they took them with notice of the deeds of trust given to secure them, they were apprised thereby, and otherwise, of the fact that, as fast as a bond was paid, an acre of the land would be released. There was no difference in the value of the land. They were advised that each acre was valued at nearly $1,000; they took their bonds with this character of security. They still have their full proportion of the lands to satisfy their bonds, and have no right to complain that they can not subject the whole tract to their thirty-one bonds. Suppose none of it had been sold then they would simply have had thirty-one one hundred and fifteenths of the proceeds of the whole to satisfy their claim. No injustice has resulted to them. The innocent purchasers of these

lots, who, in ignorance of their claim to a vendor's lien, have paid the full assessed value of each acre, and in good faith, have built homes upon it, can not, under such circumstances, be held liable.

We think the circuit court correctly ruled that plaintiffs had no vendor's lien on the allegations of this second count and properly held the several lots were released from the trust deeds, and its judgment is accordingly affirmed. BURGESS and SHERWOOD, JJ., concur.